**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**KRISTOPHER MICHAEL MORGAN**                                                    **PLAINTIFF**

**VS.**                                    **NO.   5:21-CV-05114**
                                              **(LEAD CASE)**

**CPL. TOM MULVANEY,**
**JON BECKHAM, SYDNEY**
**SIMMONS, JOLANA WILSON,**
**and THERESA ROTHE**                                                          **DEFENDANTS**

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

**KRISTOPHER MICHAEL MORGAN**                                                    **PLAINTIFF**

**VS.**                                    **NO.   5:21-CV-05124**

**KELLY HINELY, SYDNEY SIMMONS,**
**TERESA ROTHE, CPL RAINES,**
**CPL. EMMIUS, and SGT. SEARS**                                                **DEFENDANTS**

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

**KRISTOPHER MICHAEL MORGAN**                                                    **PLAINTIFF**

**VS.**                                    **NO.   5:21-CV-05153**

**THERESA ROTHE, JON BECKHAM,**
**JOLANA WILSON, SYDNEY SIMMONS,**
**RACHEL YOUNG**                                                               **DEFENDANTS**

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

**BRIEF IN SUPPORT OF WASHINGTON COUNTY DEFENDANTS'**
<u>**MOTION FOR SUMMARY JUDGMENT**</u>

## I.   INTRODUCTION

Plaintiff filed three cases, all alleging constitutional injury and a right to recover from the

Defendants under 42 U.S.C. § 1983 for alleged injuries he claims to have suffered during his

incarceration in the Washington County Jail on or about January-June 2021. His claims have been

consolidated into a single matter and this Motion will address all Washington County Defendants

and the allegations against them.   Specifically, Morgan alleges that he was denied necessary medical care and that he did not have access to a newspaper for a period of time.

Defendants have denied liability in this case.   There remain no genuine disputes as to material facts herein.   Even considering the facts in a light most favorable to the Plaintiff, Defendants are entitled to judgment as a matter of law pursuant to Fed. R. Civ. P. 56.

## II.   STANDARD OF REVIEW

"Summary judgment is appropriate only when the pleadings, depositions and affidavits submitted by the parties indicate no genuine issue of material fact and show that the moving party is entitled to judgment as a matter of law." *Uhiren v. Bristol-Myers Squibb Co., Inc.*, 346 F.3d 824, 827 (8th Cir. 2003). Defendants submit that there is "no genuine dispute as to any material fact and the [Defendants are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, *by affidavit or other evidence*, showing that a genuine issue of material fact exists." *National Bank of Commerce of El Dorado, Ark. v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999). The moving party has the burden of showing the absence of a genuine issue of material fact and they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.574, 586 (1986). "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing *Merge v. Boehler*, 762 F.2d 621, 625 (8th Cir. 1985).   "The nonmoving party must do more than rely on allegations or denials in the pleadings, and the court should grant summary judgment if any essential element of the prima facie case is not supported by specific facts sufficient to raise a genuine issue for trial." *Register v. Honeywell Fed. Mfg. & Techs., LLC*, 397 F.3d 1130, 1136 (8th Cir. 2005) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). "[S]elf-serving allegations and denials are insufficient to create a genuine issue of material fact." *Anuforo v. Comm'r*, 614 F.3d 799, 807 (8th Cir. 2010). "To survive a motion for summary judgment, the nonmoving party must substantiate [its] allegations with sufficient probative evidence [that] would permit a finding in [its] favor based on more than mere speculation, conjecture, or fantasy." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011) (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003)) (internal quotation marks omitted).

"Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).   "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)), cert. denied, 132 S. Ct.

1144, 181 L. Ed. 2d 1018 (2012).

The Court must view all evidence and inferences in a light most favorable to the nonmoving party. See *McCleary v. ReliaStar Life Ins. Co.*, 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).

### III. LEGAL ANALYSIS

### A. *Defendants were not deliberately indifferent to Plaintiff's serious medical needs;*

Plaintiff alleges that the Medical Defendants and Cpl. Mulvaney, in his official capacity, were deliberately indifferent to his serious medical needs by denying him adequate medication and proper bedding to address chronic pain from "previous injuries" and "lack of protocols for previous injuries." **5:21-CV-05514**, Doc. No. 7, p. 4, 7-8. see also, **5:21-CV-05153,** Doc. No. 1, p. 4-5, 7, 8; See also, **5:21-CV-05124**, Doc. 5, p. 4-6.     He also alleges that his medical requests were ignored for more than 30 days at a time. **5:21-CV-05153,** Doc. No.1, p. 8. He alleges that he was denied medical procedures for his pain.   **5:21-CV-05124,** Doc. No. 5, p. 6.   Finally, he alleges that he was given an improper diet.   **5:21-CV-05514**, Doc. No. 7, p. 6-7.   Plaintiff alleges that the constant pain and mental duress started after his arrest "I've developed paranoia of groups of people.   I get really bad panic attacks." **5:21-CV-05514**, Doc. No. 7, p. 9; see also **5:21-CV-05124,** Doc. No. 7, p. 9.

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817

(8th Cir. 2012). To prevail on his Eighth Amendment claim herein, Plaintiff must prove the named Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.' " *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) *see also Farmer v. Brennan*, 511 U.S. at 837; *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).

To show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted). In this case, Plaintiff complained primarily of (knee and back) pain from a motor vehicle accident which occurred approximately 15 years prior to the time period at issue.  He also complained of tooth pain, migraine headaches, sciatic nerve pain, insomnia, anxiety, PTSD, ADD, ADHD, and malnutrition. Defendants do not dispute that Plaintiff was treated for dental problems and for pain. While there was no medical evidence to support some of Plaintiff's claims, Defendants examined Plaintiff and provided treatment for pain, dental care, and mental health issues.   Defendants dispute that Plaintiff suffered all of the maladies reported.   However, because Defendants responded to the hundreds of requests for treatment from the Plaintiff by performing medical examinations and assessments and by offering treatment based on their medical judgment, it is unnecessary to focus on the objective component herein.

To establish the subjective prong of deliberate indifference, a plaintiff must show that a

prison official "actually knew of but deliberately disregarded his serious medical need." *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006). Intentionally denying or delaying access to medical care may constitute deliberate indifference. *See Estelle*, 429 U.S. at 104-05; *Dulany*, 132 F.3d at 1239.   "Intentional delay in providing medical treatment shows deliberate disregard if a reasonable person would know that the inmate requires medical attention, or the action of the officers are so dangerous that a knowledge of the risk may be presumed. *McRaven v. Sanders*, 577 F.3d 974 (8th Cir. 2009).

Additionally, the Eighth Circuit has held that a "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). See also, *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (deliberate indifference includes intentional interference with prescribed treatment; inadvertent or negligent failure to provide adequate medical care cannot be said to constitute "unnecessary and wanton infliction of pain"). "Deliberate indifference may include intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed." *Vaughan v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995). An inmate alleging that a delay in medical treatment constitutes deliberate indifference is required to "'place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment.'" *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (quoting *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)). If the inmate does not, he fails to raise a genuine issue of fact on an essential element of his claim, and summary judgment is appropriate. *Id.*

Whether a prison's medical staff deliberately disregarded the needs of an inmate is a factually-intensive inquiry. *Coleman v. Rahija,* 114 F.3d 778, 784 (8th Cir.1997); *Jensen v.*

*Clarke,* 94 F.3d 1191, 1197–98 (8th Cir.1996). The plaintiff-inmate must clear a substantial evidentiary threshold to show that the prison's medical staff deliberately disregarded the inmate's needs by administering an inadequate treatment. *See Dulany,* 132 F.3d at 1239 (holding "inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment"). "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail [s] to rise to the level of a constitutional violation." *Taylor v. Bowers,* 966 F.2d 417, 421 (8th Cir.1992).

### 1. The Medical Staff Defendants (Hinely, Wilson, Rothe, Beckham, Simmons, Young) were not deliberately indifferent to Plaintiff's serious medical needs.

In the present case, while incarcerated in the Washington County Detention Center, Plaintiff presented repeated demands and complaints of medical, dental and mental health needs on an almost daily basis. He often repeated reports of problems multiple times before it was possible for any medical staff to respond to him or examine him and then again in the days just following an examination by medical staff.   In fact, because of the volume of Plaintiff's complaints and the records generated thereby, the Statement of Indisputable Material Facts herein exceeds 600 numbered paragraphs.   In his Complaints herein, he complained that he was denied medications and medical procedures and that his requests for help were ignored by medical staff. In his deposition, Morgan alleged that he believed his constitutional rights were violated because his medical requests were "being ignored."   See Statement of Indisputable Material Facts, Ex. B, page 18:20-24:6.   When asked what each medical defendant herein did that violated Morgan's constitutional rights, he stated that the fact that each Defendant was "at work" when his requests were being "ignored" was a violation of his rights.   See Id. at page 24:5-6; page 33:24-34:11; page 35:9-12; page 52:7-21; page 52:25-53:1; page 60:23-61:12.

However, the indisputable record herein shows that each time Morgan complained of pain or other medical problems, his complaints were evaluated and he was treated according to the professional medical judgment of the jail medical providers.   See Statement of Indisputable Material Facts, Ex. C, Affidavit of Kelley Hinely.   In fact, Plaintiff admitted that he was in fact treated and evaluated in the Washington County Detention Center, but the core of his Complaints herein is that he was not given what he *requested*.   The indisputable record is replete with evidence of on-going and constant attempts by medical staff to address Morgan's persistent demands and complaints.   He was evaluated for pain in his knee, his shoulder, and his back.   He was treated for that pain with medications such as Tylenol 1000 mg, Meloxicam, Baclofen and Duloxetine.   He was also given a steroid for inflammation and chronic pain and was given a knee brace.   See Statement of Indisputable Material Facts, Ex. A-3, Medical Records, pages 34-37, 38-39, 43-132.   When he indicated that the medications were not working or asked that they be increased, the medications were discontinued or increased.   Statement of Indisputable Material Facts, Ex. C, Affidavit of Kelley Hinely.   When he continued to describe his pain as increased or non-ending, medical staff ordered further testing including a AP/Lateral C-Spine X-ray and an x-ray of his right hip and pelvis.   *Id.*

His vital signs were checked.   He underwent blood testing including a Complete Blood Count (CBC) and a Comprehensive metabolic panel (CMP).   He was given an electrocardiogram (EKG), a urinalysis, a Capillary blood glucose (CBG) test, a thyroid stimulating hormone (tsh) test; he was tested for sexually transmitted diseases, for HIV and for Hepatitis C.   All tests and x-rays were normal.   Despite the battery of tests he was given, Morgan then began to ask for a head and neck CT, a bone density scan, a white blood cell count, testing for diabetes (although prior tests did not indicate diabetes), testing of his vitamin levels and hormone levels, for cancer

screening, and asked that his lung capacity be checked.   Statement of Indisputable Material Facts, Ex. C, Affidavit of Kelley Hinely.

Morgan was evaluated for concerns of malnutrition.   His BMI (body mass index) was normal at 24.4.   *Id.* at paragraph 14. All his blood work to assess his nutrition status were normal. *Id.* at paragraph 16. When he asked for a second tray months later, his BMI was still within the normal range so a second tray of food was not necessary. *Id.* at paragraph 66.

When Morgan requested a second mat due to his ongoing pain, he was given a second mat for two weeks.   Despite medications and having the mat as requested, Morgan continued to report that he suffered nerve pain and pain in his shoulder, hip, lower back and leg.   See Statement of Indisputable Material Facts, Ex. C, Affidavit of Kelley Hinely, paragraphs 29-34.   It was determined that an unending second mat/blanket order was unnecessary.   *Id.* Morgan also reported that he had fallen and injured his hip.   No fall was reported by detention staff.   To assess Morgan, the medical provider passively observed Morgan in his housing unit for several minutes and observed no impairment and no problems walking. Statement of Indisputable Material Facts, Ex. C, Affidavit of Kelley Hinely, paragraph 52-53.

Morgan reported mental health needs including insomnia, anxiety, PTSD, ADD, ADHD. He stated he was getting angry over little things and indicated that he suffered panic attacks. Although he reported (and verified in his deposition) a long history of self-medication when out of jail by use of alcohol and marijuana, he was treated for these issues with a prescription medication, Zyprexa, for mood stabilization.   Although he first reported that the Zyprexa was not working, he later asked that the dosage be increased.   It was increased on two different occasions. Statement of Indisputable Material Facts, Ex. C, Affidavit of Kelley Hinely, paragraph 24 and 37.

Finally, Morgan was often evaluated for tooth pain, was treated with antibiotics and

naproxen for that pain, and was seen by the dentist on a monthly basis.   Morgan was noted as telling the dentist he "wants as many teeth out as possible."   See Statement of Indisputable Material Facts, Ex. A-3, page 6, 11.   On other occasions, he requested the dentist remove more than one tooth.   *Id.* at pages 14, 21, 25, 28, and 165.

The sheer volume of the records of constant medical attention, evaluation, and treatment shows that no Defendant herein was deliberately indifferent to any serious medical need of the Plaintiff.   Defendants responded to hundreds of requests for treatment and testing from the Plaintiff, performed a battery of tests to attempt to identify the various sources of the constant pain that Morgan declared, and offered medications and medical interventions – all of which Morgan indicated did no good for him.

Morgan has failed to present any evidence to support his claims that he was ignored and that there were "no protocols" for pain management.   In fact, this case presents merely a matter of Morgan's apparent lack of satisfaction with the answers he was provided.   Morgan has not and cannot present any evidence that he actually suffered from any injury or illness that was either undiagnosed or untreated by the medical staff in the Washington County Detention Center.   There is no proof that Morgan suffers any injury as a result of the exercise of the professional medical judgment for the treatment of his complaints in the Washington County Detention Center. The indisputable evidence shows that Morgan's allegations herein are simply false.

Morgan's personal belief that he needed other treatment or testing is insufficient to support his claim.   His personal disagreement with the medical staff's professional judgment is not a basis on which Plaintiff can claim deliberate indifference.   See *Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004) (citations omitted).

As noted above, deliberate indifference may be exhibited by prison medical personnel in responding to prisoners' needs or by prison officials in intentionally denying or delaying access to care or interfering with prescribed treatment. *See Meloy v. Bachmeier,* 302 F.3d 845, 849 (8th Cir.2002). In this case, although Morgan alleges he was ignored, there is simply no evidence that any treatment was delayed or that medical staff interfered with any treatment. Morgan cannot show that the medical staff at the Washington County Detention Center provided him inappropriate treatment, or that Morgan suffered any injury from a change in medication against his wishes. *See Gibson v. Weber,* 433 F.3d 642, 646 (8th Cir.2006) (deliberate-indifference claim based on inadequate medical treatment requires proof that defendant knew of and disregarded excessive risks to inmate's health, and that injury in fact resulted); *see also Meuir v. Greene County Jail Employees,* 487 F.3d 1115, 1118–19 (8th Cir.2007) (inmate has no constitutional right to particular course of treatment, and his mere disagreement with medical treatment is not basis for § 1983 liability).

Plaintiff's dissatisfaction or disagreement do not satisfy his burden of proof.   Furthermore, Plaintiff's unrelenting demands for treatments and testing does not, without more, create an obligation to provide him such treatments or testing and does not satisfy Plaintiff's burden herein. Plaintiff presents no evidence of any injury resulting from the treatment he was offered.   Nor does he present expert testimony or documentary evidence to support his claim that the treatment provided was constitutionally inadequate.   On the other hand, the Medical Staff Defendants present, by sworn affidavit and medical records, testimony that the treatment provided (or offered) was adequate and appropriate based on the findings of the medical testing and evaluations.   The Medical Defendants are entitled to judgment as a matter of law. *DuBois v. Dooley,* 277 F. App'x 651, 652 (8th Cir. 2008) citing *Bloom v. Metro Heart Group of St. Louis, Inc.,* 440 F.3d 1025,

11

1028–29 (8th Cir.2006) (speculation and conjecture do not create genuine issue of material fact). It is settled law that "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel she received adequate treatment." *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010); See also *Meuir v. Greene Cty. Jail Emps.,* 487 F.3d 1115, 1118–19 (8th Cir. 2007) quoting *Dulany*, 132 F.3d at 1240.

2. ***The Washington County (official capacity Defendant Mulvaney) was not deliberately indifferent to Plaintiff's medical needs.***

Concerning the non-medical staff, official capacity Defendant, there is no evidence that Washington County, by any policy practice or custom, was deliberately indifferent to Plaintiff's medical needs. Plaintiff testified that he believed there was no protocol for treatment of chronic pain. Even assuming there was no protocol, Plaintiff does not have a constitutional right to a particular protocol. He is entitled to constitutional access to medical care for serious medical needs, which the record shows he received. In this case, there is no evidence that Washington County was aware of any unaddressed serious medical need of the Plaintiff or that they disregarded any such medical need.

In addition, Washington County provides access to medical care on the premises of the Detention Facility 24 hours per day. This creates the best possible situation to address as many serious medical needs of inmates as quickly and efficiently as possible. Further, there is no evidence that Washington County directs the particular medical care provided to any particular inmate or that any non-medical staff has any authority to substitute their own judgment for that of medical staff on medical issues. *See Meloy v. Bachmeier,* 302 F.3d 845, 849 (8th Cir. 2002)(noting that prison officials cannot substitute their judgment for medical professional's

prescribed treatment).   The medical care to which Washington County provides access for inmates is constitutional and appropriate.

There is simply no basis for official capacity liability for the medical, dental and mental health care that the Plaintiff received.

### B.  Plaintiff's claim fails to rise to a denial of his First Amendment rights;

Regarding the Jail Defendants, Cpl. Raines, Cpl. Emmus, and Sgt. Sears, Plaintiff alleges he was denied "[a]ccess to newspaper.   They updated the kiosk and our newspaper is iledgeable. W.C.D.C. staff says it is an I.T. problem. No access to news. It's an I.T. problem is the only answer we get."  **5:21-CV-05124,** Doc. No. 5, p. 8.   In his deposition, Morgan explained he believed that Raines, Emmus, and Sears violated his rights because they were part of the chain of command that told him that the problem with the paper was an "IT" problem.   See Statement of Indisputable Material Facts, Deposition, Ex. B, page 41:5-42:15.   Morgan stated that he asked for a printed paper and he was not given one.   Id. at 42:16-44:1.   He alleged that Sgt. Sears told him that it would be fixed and it was fixed (legible) but was misaligned, making it harder to read.   Id. at 44:9-45:17.

On July 2, 2021, Plaintiff submitted a grievance which stated, "may we get the newspaper fixed. The print is to [sic] small to read… it's a violation of our rights." *See* Exhibit A2, Requests & Grievances, Page 398. Det. Inv. Tom Mulvaney of WCDC personnel responded the same day, "Mr. Morgan, we are aware of this issue, and doing the best we can right at this time. There is an issue at the newspaper office regarding the way it use [sic] to be loaded, and their IT Dept. is diligently working on this issue trying to fix it. In the meantime, you do have a TV in your housing area with access to local and national news." *Id.*

Supreme Court law is well established that "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier,* 417 U.S. 817, 822 (1972). Among other things, the "Constitution protects the rights to receive information and ideas." *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972). Prison policies impinging on inmates' First Amendment rights are valid only if they are reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89-90 (1987); *Cooper v. Schriro*, 189 F.3d 781, 784 (8th Cir. 1999). "[E]ven though this court engages in a deferential review of the administrative decisions of prison authorities, the traditional deference does not mean that courts have abdicated their duty to protect those constitutional rights that a prisoner retains." *Fortner v. Thomas*, 983 F.2d 1024, 1029 (11th Cir. 1993).

Generally, an absolute ban on inmate access to newspapers and magazines violates the First Amendment because it is considered an exaggerated response to legitimate penological needs. Mann v. Smith, 796 F.2d 79, 82 (5th Cir. 1986). Furthermore, a number of courts have held that prisoners have a right to receive and read newspapers. See, e.g, Sizemore v. Williford, 829 F.2d 608, 610 (7th Cir. 1987) (absent restrictions based on legitimate goals of confinement, prison inmates retain First Amendment right to receive and read newspapers). Nevertheless, certain restrictions on access to newspapers and magazines have been recognized as valid. See Beard v. Banks, 548 U.S. 521, 530 (2006) (prison's policy of restricting access to newspapers, magazines, and photographs to inmates placed in most restrictive level of prison's long-term segregation unit was justified by the need to provide particularly difficult prisoners with increased incentives for

14

better prison behavior, the need to minimize the amount of property they control in their cells, and the need to ensure prison safety).

In this case, there is no regulation or restriction which prohibited the Plaintiff from accessing the newspaper or from receiving information or ideas.  In fact, Washington County subscribed to the Northwest Arkansas Democrat Gazette, a newspaper that has state, local, national and international coverage, and provided access to all detainees through the kiosk and or tables in their housing units.   Such subscription does not violate the First Amendment.   Rather, the complaint herein resulted because the digital programming suffered a technological error, causing it to be very small and, as a result, illegible.   There is no allegation that any Defendant or any Washington County official caused the problem or that they were able to fix it without technical assistance.   Rather, Plaintiff merely alleges that the fact of the outage was a violation of his rights. The law simply does not support his position.

It is also relevant that, during the same time Plaintiff complained that he was unable to read the newspaper, Plaintiff had access to information and ideas through the television in his housing unit.   At most, the technical glitch was negligence on the part of the software producer, not an official at Washington County.   Washington County was diligent in seeking assistance and had the problem resolved in a timely manner.   Even assuming Plaintiff could not easily read the newspaper for one month, he fails to identify any action or policy by Washington County or any of its employees that caused the issue.   Plaintiff's claim fails to rise to a violation of the First Amendment.   Defendants are entitled to judgment as a matter of law.

### *C.  Defendants are entitled to qualified immunity;*

"In a § 1983 action, state actors may be entitled to qualified immunity." *McRaven v. Sanders,* 577 F.3d 974, 980 (8th Cir.2009) (citation omitted).   Qualified immunity may shield a

government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact.   *McClendon v. Story County Sheriff's Office,* 403 F.3d 510, 515 (8th Cir.2005).

Qualified Immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *See Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985), *Brown v. Nix,* 33 F.3d 951, 953 (8th Cir. 1994). Qualified immunity is designed to "protect officials from the disruptions of going to trial as well as from liability for money damages. . . [i]t is important for public officials to be shielded from the burden of trial on insubstantial claims." *Wright v. South Arkansas Regional Health Center, Inc.*, 800 F.2d 199, 202-03 (8th Cir. 1986). Accordingly, the Court generally should rule upon the defense "at the earliest possible time." *Id.*

In deciding the qualified immunity question, the court should "ask whether the agents acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable interpretation of the events can be constructed ...." *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The test for qualified immunity is an objective one. *Id.* Officials should not have to always err on the side of caution out of a fear of being sued. *Id.* at 229. Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335 (1986).

In *Pearson v. Callahan,* 129 S.Ct. 808 (2009), the U.S. Supreme Court held that there are

16

two prongs to a qualified immunity analysis. A court must consider both whether a constitutional right has been violated and whether that right had been clearly established at the time of the alleged violation. The Court held in *Pearson,* that, while often appropriate, is not mandatory to consider these issues in any particular sequence. Under *Pearson,* courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson,* 129 S.Ct. at 818 (overruling, in part, in *Saucier v. Katz,* 533 U.S. 194, 201 (2001)).

In this case, Plaintiff has failed to prove a constitutional violation by any of the named Defendants.   Defendants are entitled to the protections of qualified immunity.

### D.   There is no basis for official capacity/county liability.

Plaintiff's official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, the official capacity claims are treated as claims against Washington County. See *Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010). It is well-settled that a suit against a county official or employee, in his official capacity, is the equivalent of a suit against the county itself.   *See Liebe v. Norton*, 157 F.3d 574, 578 (8th Cir. 1998); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991).    Official capacity suits represent "only another way of pleading an action against an entity of which an officer is an agent."    *See Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n.55 (1978).    In short, "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity."    *Id*. At 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471-472 (1985).    In fact, when officials of a county die or leave office, their successors *automatically* assume their roles in the litigation.    *See Hafer*, 502 U.S. at 25 (citing Fed. R. Civ. Proc. 25(d)(1); Fed. Rule App. Proc.

43(c)(1); and S. Ct. Rule 35.3).   Furthermore, multiple official capacity claims against officials and employees of the same entity are legally identical and redundant, such that the dismissal of one precludes further litigation of any of the others.   *See Baker v. Chisom*, 501 F.3d 920 (8th Cir. 2007), *cert denied*, 554 U.S. 902.

However, "it is well established that a municipality cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). A governmental entity, here Washington County, may be held liable for the unconstitutional acts of its officials and/or employees only when those acts implement or execute an unconstitutional county policy or custom.   *See Doe v. Washington County*, 150 F.3d 920, 922 (8th Cir. 1998).   Therefore, to establish Washington County's liability under § 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009)(citation omitted).

To establish the existence of an unconstitutional policy, the Plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). Where an official policy is itself unconstitutional or directs employees to take *unconstitutional* action, no evidence beyond a statement of the policy and its exercise is necessary to establish § 1983 liability. *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 389-90 (8th Cir.2007). Id. at 817-18.

In the absence of a written policy, the plaintiff must identify a pattern of widespread unconstitutional conduct that was so pervasive and well-settled that it had the effect of law.   *See Jane Doe A v. Special Sch. Dist. of St. Louis County*, 901 F.2d 642, 646 (8th Cir. 1990).   Plaintiff must show that the County "through its deliberate conduct . . . was the 'moving force' behind the

injury alleged." *Brown*, 520 U.S. at 526.   In *Johnson v. Douglas County Medical Dept.*, 725 F.3d

825 (8th Cir. 2013), the Court outlined the necessary elements for establishing the existence of an

unconstitutional custom. It stated:

> To establish a claim for "custom" liability, [Plaintiff] must demonstrate:1) The existence
> of a continuing, widespread, persistent pattern of unconstitutional misconduct by the
> governmental entity's employees; 2) Deliberate indifference to or tacit authorization of
> such conduct by the governmental entity's policymaking officials after notice to the
> officials of that misconduct; and 3) That Plaintiff was injured by acts pursuant to the
> governmental entity's custom, i.e., that the custom was the moving force behind the
> constitutional violation.

*Id.*, 725 F.3d at 828 (citations omitted).

In this case, Plaintiff alleged that the County was liable to him in damages because there

was no protocol for treatment of chronic pain.   However, the indisputable record shows that

Plaintiff himself received treatment for alleged chronic pain throughout his incarceration in

Washington County.   Washington County's provision of access to available medical staff and

medical care within the walls of the Washington County Detention Center is not deliberately

indifferent to Plaintiff's serious medical needs.

Further, Plaintiff's allegation that a computer error caused the newspaper to be illegible for

approximately one month fails to identify any county policy, practice, or custom which was the

moving force behind the alleged illegibility of the paper during that time.   The simple existence of

a technological problem, without more, fails to point to some decision to proceed in a manner that

violated the Plaintiff's rights.   In fact, as noted above, the indisputable evidence shows that the

Defendants and others at Washington County engaged professionals to correct the computer error

in a reasonable period of time.   In addition, Plaintiff was provided additional access to information

and ideas during the same period of time through the television in his housing area.

Based on the foregoing, Plaintiff has failed to point to any unconstitutional policy or any

policy, practice or custom which either caused a violation of his rights or which was deliberately indifferent to his constitutional rights.   There is no basis stated for official capacity liability. Washington County is entitled to judgment as a matter of law.

## IV. CONCLUSION

In *Celotex v. Catrett,* 477 U.S. 317 (1986), the seminal case on interpreting the federal summary judgment rule, F.R.C.P. 56(c), the Supreme Court carefully explained that a party seeking summary judgment always has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, *if any*,' which it believes demonstrate the absence of a genuine issue of material fact." The *Celotex* Court held ultimately that the movant need not submit supporting affidavits in order to prevail if he can show from the other material on file the absence of a genuine issue of material fact. The case may properly be cited for the proposition that a party moving for summary judgment may shift the burden of proof by showing that the plaintiff will be unable to offer any proof on an essential element of his case (generally referred to as the "scintilla rule"). The Court, in reaching its conclusion, explained that its holding in *Adickes v. Kress,* 398 U.S. 144, a 1970 case which construed Rule 56(c), did not mean that the burden is on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the non-moving party bears the burden of proof, but instead, the moving party may discharge its burden by pointing out to the district court that "there is an absence of evidence to support the non-moving party's case." The movant may carry its burden "with or without supporting affidavits." *See Celotex supra.*   It is the non-movant who must go beyond the pleadings and by affidavit, depositions or other *substantive* evidence designate specific facts showing that there is a genuine

20

issue for trial. *Id.* (Emphasis added).

The evidence in this case fails to support Plaintiff's allegations of violations of his constitutional rights.   No material facts remain in dispute.   Defendants are entitled to the protections of qualified immunity and should be granted judgment as a matter of law.

Respectfully submitted,

CPL. TOM MULVANEY, THERESA ROTHE, JON BECKHAM, JOLANA WILSON, SYDNEY SIMMONS, KELLY HINELY, CPL. RAINES, CPL EMMIUS, SGT. SEARS, and RACHEL YOUNG, Washington County Defendants

JaNan Arnold Thomas, Bar No. 97043
Attorney for Defendants
ASSOCIATION OF ARKANSAS COUNTIES
RISK MANAGEMENT SERVICES
1415 W. Third
Little Rock, Arkansas 72201
Telephone (501) 372-7550
email: jthomas@arcounties.org

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2022, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system, and I mailed the document by United States Postal Service to the following non-CM/ECF participants:

Mr. Kristopher Michael Morgan
703 Thompson
Springdale, AR    72764

I hereby certify that on March 21, 2022, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system, which shall send notice to the following CM/ECF participants:

Mr. Ryan P. Blue
rblue@hallboothsmith.com

_____JaNan Arnold Thomas_____
JaNan Arnold Thomas, #97043
Attorney for Defendants