IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**KRISTOPHER MICHAEL MORGAN**                                                                    **PLAINTIFF**

V.                              CASE NO. 5:21-CV-05114

**THERESA ROTHE, KCH; JON BECKHAM, KCH;
SERGEANT SARAH SEARS; JOLANA WILSON, KCH;
SYDNEY SIMMONS, KCH; CORPORAL TOM MULVANEY;
RACHEL YOUNG, KCH; NURSE KELLEY HINELY;
JANET HANEY, Employed by Summit;
CORPORAL RAINES; and CORPORAL EMMUS**                                       **DEFENDANTS**

**KRISTOPHER MICHAEL MORGAN**                                                                    **PLAINTIFF**

V.                              CASE NO. 5:21-CV-05124

**KELLEY HINELY, KCH; SYDNEY SIMMONS, KCH;
THERESA ROTHE, KCH; JANET HANEY,
Employed by Summit; CORPORAL RAINES;
CORPORAL EMMUS; and SERGEANT SEARS**                                         **DEFENDANTS**

**KRISTOPHER MICHAEL MORGAN**                                                                    **PLAINTIFF**

V.                              CASE NO. 5:21-CV-05153

**THERESA ROTHE, KCH; NURSE JON BECKHAM, KCH;
NURSE JOLANA WILSON, KCH; SYDNEY SIMMONS, KCH;
and RACHEL YOUNG, KCH**                                                                           **DEFENDANTS**

## OPINION AND ORDER

This is a civil rights action filed by Plaintiff Kristopher M. Morgan pursuant to 42 U.S.C. § 1983. Mr. Morgan proceeds *pro se* and *in forma pauperis*. The claims in the case arise from Mr. Morgan's incarceration in the Washington County Detention Center ("WCDC"). He alleges various Defendants violated his constitutional rights by denying him an adequate diet; adequate dental, mental health, and general medical care; and

1

access to a newspaper.  Three separate cases filed by Mr. Morgan were consolidated in this action, by agreement of the parties.  See Docs. 58 & 59.

On July 21, 2022, the Honorable Mark E. Ford, United States Magistrate Judge for the Western District of Arkansas, issued a Report and Recommendation ("R&R") (Doc. 94) concerning a Motion for Summary Judgment filed by separate Defendant Janet Haney (Doc. 65) and a Motion for Summary Judgment filed jointly by the remaining Defendants (Doc. 79). The R&R recommends granting Ms. Haney's Motion and granting in part and denying in part the other Defendants' Motion.  The only claims Magistrate Judge Ford recommends remain for trial are an individual-capacity claim for denial of dental care against separate Defendant Nurse Practitioner Kelley Hinely and an official-capacity claim against Karas Correctional Health ("KCH") related to the dental-care policy in place at the WCDC.

Nurse Practitioner Hinely and KCH jointly filed a single document containing their objections to the R&R (Doc. 95).  Nurse Practitioner Hinely contends the medical evidence does not demonstrate any failure on her part to make an individualized assessment of Mr. Morgan's dental complaints, and she further argues that no reasonable jury could find she was deliberately indifferent to Mr. Morgan's dental needs based on the treatment record.  KCH objects to the Magistrate Judge's finding that there is a genuine, material question of fact as to whether KCH's policies and procedures regarding the provision of dental care violate the Constitution.

Mr. Morgan makes two objections to the R&R.  See Doc. 96.  First, he objects to the dismissal of his diet-related claims against Ms. Haney, who is employed by Summit Food Services as food service director overseeing all food production and menus at the

2

WCDC. Mr. Morgan maintains there is a genuine, material dispute of fact as to whether Ms. Haney violated his constitutional rights by serving him nutritionally deficient meals. Specifically, he claims that the food lacks "proper proteins, fruits, or vegitables [sic], portion sizes varying, and all the meals being defeciant [sic] in vitamans [sic], nutritional, and caloric intake." *Id.* at p. 3. Further he claims the meals he received caused him to suffer "a seveare [sic] mineral and nutritional deficiency resulting in slugish [sic] behavior, forgetfullness [sic], and slowed if not impared [sic] cognitive abilities." *Id.* at p. 4. Second, Mr. Morgan objects to the dismissal of his non-dental medical claims. Specifically, he notes: (1) KCH medical staff's failure to appropriately respond to his kiosk requests for medical treatment and pain management; (2) Nurse Practitioner Hinely's failure to verify that he received an outside mental health consultation; (3) KCH medical staff's refusal to refer him to an Arkansas Department of Corrections doctor for a second opinion; and (4) KCH medical staff's refusal to provide him with narcotic pain medication.

Pursuant to 28 U.S.C. § 636(b)(1), the Court has reviewed the record *de novo*, paying particular attention to those findings and recommendations that have drawn objections.

## I. OBJECTIONS

### A. Nurse Practitioner Hinely's Objection

According to the undisputed facts of record, Mr. Morgan submitted multiple requests or grievances regarding his need for dental care and associated pain management from January 16, 2021, through March 19, 2021. In all, Mr. Morgan made 24 separate pleas for help with his dental issues over the course of 9 weeks. He complained of constant pain related to cavities, broken teeth, an abscessed tooth, and

associated migraine headaches. During that initial two-month wait, various KCH nurses examined Mr. Morgan at the WCDC and confirmed he suffered from broken teeth and severe decay. *See, e.g.*, Doc. 81-11, p. 47 (Nurse Johnathan Beckham noting "[m]ultiple teeth missing with severe decay" on January 30, 2021). Mr. Morgan was prescribed antibiotics and Tylenol and received no other treatment for his teeth throughout this two-month period. Nurse Practitioner Hinely had access to Mr. Morgan's medical records and was aware of his grievances and the other nurses' examinations, *see, e.g., id.*, but she did not examine Mr. Morgan's mouth herself until March 16, 2021, shortly before the dentist made his monthly visit to the WCDC. During this examination, Nurse Practitioner Hinely diagnosed Mr. Morgan with "multiple dental caries with hyperplasia on gums"—just as several other nurses had been documenting in his medical file since January. *Id.* at p. 62. Nurse Practitioner Hinely took no action following this diagnosis except to "renew Keflex," an antibiotic, and instruct Mr. Morgan to wait "until dental visit." *Id.* The dentist's first appointment with Mr. Morgan took place on March 19, 2021.

Although Nurse Practitioner Hinely—unlike the other nurses—had the authority to recommend Mr. Morgan receive emergency or other necessary dental treatment for dental pain, there is a genuine, material dispute of fact as to whether she made any individualized assessment of his condition and recommended treatment accordingly. Other nurses placed Mr. Morgan on a dental call list so that he could wait in line to see the dentist, who only visited the WCDC once a month. The record appears to show Nurse Practitioner Hinely routinely reviewed Mr. Morgan's file but took no action in response to Mr. Morgan's objectively serious medical needs other than to periodically authorize an antibiotic prescription and over-the-counter Tylenol. She concedes in her objection to the

R&R that she "*could* have authorized emergency or additional dental treatment (to be undertaken by dental professionals such as oral surgeons, off-site)," but argues "there is no evidence in the record that Morgan's cavities and overgrown gums needed emergency dental treatment." (Doc. 95, p. 16 (emphasis in original)).[1] The Court disagrees. There is sufficient evidence in the record from which a fact-finder could determine that Nurse Practitioner Hinely was deliberately indifferent to Mr. Morgan's serious dental needs and knowingly allowed him to suffer with dental pain for months.

It bears mentioning that Mr. Morgan's first visit with the dentist in March 2021 did not apparently address all his dental problems. When the dentist saw Mr. Morgan during his monthly visit to the jail in April, the dentist noted "teeth on [upper right] are broken down and hurting, back hurt more than front ones." (Doc. 81-11, p. 11). The same diagnosis was made month after month. *See, e.g., id.* at pp. 21 (June 2021), 25 (August 2021). Though Nurse Practitioner Hinely and KCH suggest that extractions were the only treatment performed on Mr. Morgan because he requested such treatment, *see* Doc. 95, p. 17, they neglect to mention that Mr. Morgan was informed *by a nurse, in writing*, on January 26, 2021, just after his first complaint about painful teeth, that the WCDC had an extractions-only treatment policy. *See id.* at p. 45. This may not have been the only time Mr. Morgan was informed about this policy/custom, but it is very clearly documented at

---

[1] The objections tend to minimize Mr. Morgan's hyperplasia diagnosis by describing the condition as a cosmetic one ("overgrown gums"). However, the American Academy of Oral Medicine notes that patients diagnosed with gingival hyperplasia have gums that "are often tender, soft, red, and bleed easily."
https://www.aaom.com/index.php%3Foption=com_content&view=article&id=132:gingival-enlargement&catid=22:patient-condition-information&Itemid=120 (last accessed Sept. 16, 2022).

5

least once in his medical file.

Furthermore, the only dental treatment Mr. Morgan actually received at the WCDC was, in fact, dental extractions—multiple dental extractions, to be precise. Two teeth were extracted during his first dental visit in March. During that visit, the dentist noted that Mr. Morgan suffered from decaying, painful teeth across both arches of his mouth. (Doc. 81-11, p. 6). This diagnosis conforms with Nurse Practitioner Hinely's earlier observations. Thereafter, from March to August 2021, the dentist extracted *12 teeth* from Mr. Morgan's mouth—two teeth per monthly visit—with a final pair of teeth extracted in November 2021, for a *total of 14 teeth* extracted. See Doc. 94, pp. 18–19.[2]

From these facts, a reasonable juror could conclude Mr. Morgan experienced serious and painful dental issues from March to November 2021, with little to no respite. The evidence could reasonably be interpreted to mean that Nurse Practitioner Hinely "treated" all these issues by doing nothing—that is, by continuing the administration of Tylenol for pain and by instructing her nurses to place Mr. Morgan on the monthly dental extraction list. The Eighth Circuit has previously found that even a "three-week delay in dental care, coupled with knowledge of the inmate-patient's suffering, can support a finding of an Eighth Amendment violation under section 1983." *Boyd v. Knox,* 47 F.3d 966, 969 (8th Cir. 1995). "Toothaches can be excruciatingly painful, and dental care is an important part of proper health care." *Hartsfield v. Colburn,* 491 F.3d 394, 397 (8th Cir. 2007).

---

[2] Nurse Practitioner Hinely informs the Court in her objection that Mr. Morgan was released to the custody of the Arkansas Department of Correction in November 2021 but later returned to the WCDC and is currently in WCDC custody. Since his return, he has had *6 more teeth* pulled for a *total of 20 teeth* extracted at the WCDC. See Doc. 95, p. 17.

Accordingly, Nurse Practitioner Hinely's objection is **OVERRULED**, and the individual-capacity claim against her related to the provision of medical care, specifically dental care, is preserved for trial.

### B. KCH's Objection

The Magistrate Judge also recommends preserving for trial Mr. Morgan's claim against KCH regarding its policy or custom concerning the provision of dental care at the WCDC. KCH contends its written dental policy contemplates a wide variety of dental services offered to inmates and excludes only cosmetic dental work. Further, KCH argues that according to its written policy, those detainees "experiencing acute dental problems (i.e., severe pain, infection, bleeding gums) may receive emergency dental care"—and do, in fact, receive such care for those symptoms. (Doc. 81-16, p. 7).

Upon review of the record, the Court agrees with the Magistrate Judge that there is a genuine, material dispute of fact as to whether KCH's dental treatment policy or custom—as implemented—violates the Constitution. As explained in the R&R, there are facts in the record to show that—regardless of the language of the official written policy—the practice or custom of KCH staff at the WCDC, when confronted with complaints of dental pain, infection, decay, and injury, is to do only the following: (1) place inmates on a first-come-first-served waitlist to see a dentist, regardless of the nature of the dental complaint or the duration and severity of the pain; (2) require that the dentist examine and treat inmates no more than one day per month; (3) require inmates who do not receive treatment on the single treatment day per month to request to be placed on the waitlist for the following month's dental visit, again, regardless of the nature of the dental complaint or the duration and severity of the pain; and (4) restrict the dentist's treatment

7

options to extractions only. Further, there are disputes of fact as to whether "emergency dental care" is ever recommended by KCH staff for "acute dental problems," as the written policy defines them. *See id.*

KCH does not dispute that it is a corporation providing health care services to WCDC inmates under color of state law. "[A] corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies." *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975–76 (8th Cir. 1993) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978)). Here, the Court finds there is a genuine, material question of fact as to whether KCH has a policy or custom of deliberately disregarding WCDC prisoners' objectively serious dental needs. If the facts at trial show KCH maintains a pull-teeth-only policy or custom that is divorced from the exercise of sound medical judgment, such would likely be unconstitutional. *See, e.g., Heitman v. Gabriel*, 524 F. Supp. 622, 627 (W.D. Mo. 1981) ("While it is by no means unprecedented for an old-fashioned prison regime to offer tooth extraction as 'the only dental care,' no case has been found where such a limitation has been deemed judicially tolerable.") (internal citation omitted).

For all these reasons, KCH's objection is **OVERRULED**, and the claim against it will proceed to trial.

### C. Mr. Morgan's Objections

#### 1. Diet

Mr. Morgan maintains that his claims against Ms. Haney and her employer, Summit Food Services, related to the diet at the WCDC are sufficient to survive summary judgment. The Court disagrees. The R&R explains that Ms. Haney, who is not a nurse,

cannot be held liable for any medical decisions related to Mr. Morgan's diet, such as the decision to deny him double portions or an extra food tray. Furthermore, even though the Court accepts as true that Mr. Morgan lost a total of 60 pounds over the ten-month period he was housed at the WCDC in 2021, this weight loss does not necessarily mean that Ms. Haney and Summit were deliberately indifferent to his health and safety. Failure to provide adequate nutrition may constitute deliberate indifference in violation of the Eighth Amendment. However, "[t]o demonstrate a constitutional violation, [a prisoner] must show that the defendants were deliberately indifferent to his nutritional needs, that is, 'failed to act despite . . . knowledge of a substantial risk of serious harm.'" *Ingrassia v. Schafer*, 825 F.3d 891, 897 (8th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).

There are no facts in the summary judgment record to show Ms. Haney knew of a substantial risk of harm to Mr. Morgan related to his diet at the WCDC. She was not made aware of any adverse health effects Mr. Morgan was allegedly suffering due to the food he was provided—including weight loss, sluggish behavior, forgetfulness, or other cognitive deficiencies. Mr. Morgan submitted multiple grievances about his diet through the kiosk system, and Ms. Haney answered those grievances in writing. The Court has reviewed the grievances, (Doc. 81-3, pp. 1–25), which are the only communications Ms. Haney (and Summit) received about Mr. Morgan's dietary complaints, and none disclose that Mr. Morgan was suffering from adverse health effects due to diet. Instead, Mr. Morgan used the grievances to: (1) request a vegetarian diet in February 2021, which Ms. Haney approved; (2) complain about what foods were included in or missing from the vegetarian tray; (3) request information about nutritional and dietary guidelines; (4)

express doubt that beans were an adequate source of protein on the vegetarian diet; and (5) express doubt that he was receiving an adequate portion size. *See id.* On March 16, 2021, he asked through the kiosk if he could "go back to the normal food trays" and stated he was "done trying to get the vegi tray with the proper proteins." *Id.* at p. 15. Ms. Haney immediately switched him to the non-vegetarian tray option. *Id.* After that, Mr. Morgan asked for "milk to replace my drink," and Ms. Haney responded, "I'm sorry sir but we do not serve milk." *Id.* at p. 21. Finally, in September 2021, Mr. Morgan asked repeatedly for a second tray of food with his meals because he was "sure they [were] not up to nutritional or dietary standards," and Ms. Haney informed him he had to "have a medical order for a second tray." *Id.* at p. 24.

Mr. Morgan does not allege in his objections that he informed Ms. Haney and Summit that the diet he received at the WCDC was causing him a substantial risk of serious harm. Instead, he argues that Ms. Haney's repeated refusal to supply him with copies of federal dietary and nutritional guidelines and the jail's daily menus should be enough to raise a question of fact as to whether she was deliberately indifferent to his serious medical needs. The Court disagrees and finds the R&R correctly finds there is no evidence Ms. Haney and Summit knew of but deliberately disregarded alleged deficiencies in Mr. Morgan's diet. His objection is therefore **OVERRULED**.

### 2. Non-Dental Medical Treatment

Mr. Morgan also objects to the dismissal of his non-dental medical claims against various Defendant nurses and Nurse Practitioner Hinely. With respect to mental health care, the Court has reviewed the WCDC's medical records and finds there is no genuine, material dispute of fact that Nurse Practitioner Hinely was both aware of Mr. Morgan's

mental health care needs and responsive to those needs. A medical health social worker named Sheila Bryant visited the WCDC to discuss with Mr. Morgan how he was feeling and how his medications were working. Nurse Practitioner Hinely prescribed Mr. Morgan various mental health medications, which were adjusted periodically in response to his requests or complaints. The Court finds no facts in the record indicating Nurse Practitioner Hinely or the other nurses deliberately disregarded Mr. Morgan's serious mental health needs, whether in their responses to his kiosk complaints, their refusal to prescribe certain drugs or treatments, or their refusal to authorize outside consultations with medical professionals.

As to Mr. Morgan's more general medical needs, and in particular his chronic pain issues, it is undisputed that the medical Defendants provided him with a second mattress, prescription pain medications, ordered x-rays and blood tests, took vital signs, and referred Mr. Morgan for physical therapy. Though Mr. Morgan may disagree with the decisions the medical staff made and would have liked to have obtained a second opinion, the record fails to disclose any evidence of deliberate disregard of his chronic musculoskeletal pain. In other words, there are no facts to show that the medical Defendants were grossly negligent in their treatment of Mr. Morgan's pain, including with respect to their prescription choices. "[M]ere disagreement with treatment decisions does not give rise to the level of a constitutional violation." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (cleaned up). Accordingly, Mr. Morgan's objections concerning the dismissal of his non-dental medical claims are **OVERRULED**.

## II. CONCLUSION

Having overruled all objections, **IT IS ORDERED** that the R&R is **ADOPTED IN**

**ITS ENTIRETY**.

**IT IS THEREFORE ORDERED** that Defendant Janet Haney's Motion for Summary Judgment (Doc. 65) is **GRANTED**, and all claims against her are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the remaining Defendants' Motion for Summary Judgment (Doc. 79) is **GRANTED IN PART AND DENIED IN PART**. The Motion is **GRANTED** as to all claims against Defendants Sears, Mulvaney, Raines, Emmus, Rothe, Beckham, Wilson, Simmons, and Young, and they are **DISMISSED WITH PREJUDICE**. The Motion is **DENIED** as to the individual-capacity claim for denial of dental care against Nurse Practitioner Kelley Hinely and the official-capacity claim for denial of dental care against Karas Correctional Health. A scheduling order will issue setting the remaining two claims for trial.

**IT IS SO ORDERED** on this 20th day of September, 2022.

```
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE
```